UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                          Chapter 7

Cody Anthony Hidalgo,                           Case Number 22-41931

     Debtor.                                    Hon. Mark A. Randon

_____/

Roman Stone Works, Inc., et al,

     Plaintiffs,
v.                                              Adversary Proceeding
                                                Case No. 22-04113
Cody Anthony Hidalgo,

     Defendant.

_____/

## OPINION AND ORDER DENYING
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This adversary proceeding involves a seemingly innocuous Facebook post

that "went viral" after Cody Hidalgo ("Debtor" or "Defendant") falsely claimed it

was the reason he was fired from his job at Roman Stone Works, Inc. ("the

Company or Roman Stone"). In the post's wake, the Company endured a barrage

of negative publicity and website hacks, and its co-owners, Craig Cassel and

Andrew Ferenc, were subjected to disparaging comments and personal threats.

The Company, Cassel, and Ferenc ("Plaintiffs") filed a four-count complaint against Debtor in state court. Of the four counts, only two meet the standard for nondischargeability under section 523(a)(6) of the bankruptcy code. Debtor failed to appear or otherwise defend the action, and the state court entered a $150,577.75 default judgment. The state court made no finding that Plaintiffs were entitled to a default judgment on all counts; that each count was, alternatively, entitled to the entire judgment amount; or that a specific amount was designated for each count. Eighteen months later, Debtor filed Chapter 7 bankruptcy; Plaintiffs filed this adversary proceeding challenging the dischargeability of the judgment debt.

Plaintiffs' motion for summary judgment is pending. Plaintiffs argue collateral estoppel precludes relitigation of the issues raised in the state court action and, the judgment debt is nondischargeable under section 523(a)(6). Debtor responds that the issues weren't actually litigated or necessary to the judgment. The Court finds that in Michigan, a true default judgment is entitled to the same preclusive effect as a judgment that follows an answer and contest and, therefore, satisfies the "actually litigated" requirement. However, because the Court cannot determine with certainty which of the four counts were necessary to the state court judgment, the Court **DENIES** Plaintiffs' motion.

## II.     BACKGROUND

Debtor worked for Roman Stone, a limestone fabrication business.  On Sunday, October 20, 2019, Debtor posted a "meme" on Facebook which read, "BOSS MAKES A DOLLAR, I MAKE A DIME, THAT'S WHY I POOP, ON COMPANY TIME."  Accompanying the quote was a picture of the Sesame Street character "Elmo" seated on a potty.

Ferenc, the Company's manager and co-owner, was none too pleased when he saw the post; he and Debtor exchanged the following text messages:

> FERENC:     We don't make a dollar when your [sic] shitting all the time.  Why don't you stay home and do your shitting. I don't like to play your bullshit games. Maybe there's a company out there that would put up with your games cause I won't.
> Good luck!
>
> DEBTOR:     What are you talking about?
>
> FERENC:     Look on your Facebook page, do you think thing[s] don't get around?
>
> DEBTOR:     Because I shared a funny meme? On a Sunday? When I'm not at work?
>
> FERENC:     You brought work into it on a Sunday.
>
> DEBTOR:     So you're going to fire me over a meme I shared? That was nowhere relevant to work at all. I share things I think are funny all the time

It's a meme. Andy why are you doing all of this
over a meme[?]

Despite the implication that he may be fired, Debtor worked, as scheduled, on October 21 and October 22, 2019, without issue. However, on October 23, 2019, Debtor told his supervisor he wanted to attend a job fair during work hours. Debtor was warned that he did not have permission to search for new employment on company time, and if he left, he would be fired. Debtor walked off the job–his employment was terminated.

Debtor posted again on Facebook, falsely stating that it was the "meme" rather than walking off the job that caused his employment termination. He also used local and international medial outlets such as "LADBible" and "Twitter" to perpetuate the story. As the post gained in popularity, a group of sympathizers, agitators, and troublemakers, numbering in the thousands, began leaving negative Facebook and Google reviews about the Company and voicing their displeasure about Debtor's alleged mistreatment. The Company's business profiles were hacked; its name was changed to "Elmo's Roman Stone Works and Communal Outhouse" and "Elmos's Fecal Works," and its official photo was changed to a picture of male genitals. Ferenc and Cassel also received hate mail, threats, and

-4-

other forms of harassment, such as unidentified packages containing feminine hygiene products and glitter bombs mailed to their personal addresses.

After Debtor ignored a cease and desist letter from Plaintiffs' counsel, Plaintiffs sued Debtor in the Wayne County Circuit Court. The complaint contained four counts: (I) Defamation of Business Roman Stone Works, Inc.; (II) Personal Defamation of Craig Cassel and Andrew Ferenc; (III) Intentional Infliction of Emotional Distress; and (IV) Tortious Interference. Debtor was timely served with the summons and complaint but failed to answer or otherwise defend the action. Plaintiffs filed a motion for default judgment, and on August 10, 2020, the Wayne County Circuit Court granted the default judgment, awarding Plaintiffs $150,577.75. But the default judgment lacked detail. For example, it contained no explanation as to how the $150,577.75 amount was determined, or which counts were considered in the determination; it made no finding that each of the four counts were, alternatively, entitled to the entire default judgment amount; and it did not assign a specific dollar amount to each count.[1]

Debtor did not appeal the judgment. On March 15, 2022, he filed Chapter 7 bankruptcy. Plaintiffs' adversary proceeding followed.

_____

[1]The state court may have explained its rationale during the hearing on the motion, but neither side has provided this Court with a hearing transcript.

## III.   STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The Court must draw all reasonable inferences in favor of the party opposing the motion.  *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).  However, "[t]he nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; [he] must go beyond the pleadings and support [his] contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  To support their respective

positions, each party must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *See, also*, *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir. 2001) ("the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact").

## IV.  APPLICABLE LAW AND ANALYSIS

### A.  *Collateral Estoppel*

Collateral estoppel applies in nondischargeability actions under the bankruptcy code. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).  Generally, "collateral estoppel . . . 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Long v. Piercy (In re Piercy)*, 21 F.4th 909, 918 (6th Cir. 2021) (citation omitted).

To determine whether a state court judgment precludes relitigation of an issue of law or fact, the Full Faith and Credit Statute, 28 U.S.C. § 1738, requires courts to "'consider first the law of the State in which the judgment was rendered

to determine its preclusive effect.'" *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997) (quoting *Marrese v. Am. Acad. Of Orthopedic Surgeons*, 470 U.S. 373, 375 (1985)). If the state court would give preclusive effect to the judgment, the bankruptcy court must follow "unless Congress has expressly or impliedly created an exception to §1738 which ought to apply to the facts before the federal court." *In re Calvert*, 105 F.3d at 317 (citing *Marrese*, 470 U.S. at 386).

The Sixth Circuit has found no indication in the bankruptcy code or legislative history suggesting that Congress intended to create an exception to § 1738. *In re Calvert*, 105 F.3d at 322. It has also made no distinction between a case where a defendant participates in part of a state court lawsuit and one where a defendant does not respond at all (i.e., a true default). *Id.* As such, "collateral estoppel applies to true default judgments in bankruptcy proceedings in those states which would give such judgment that effect." *Id.* Therefore, the Court looks to Michigan law to determine whether collateral estoppel precludes relitigation of the issues in Plaintiffs' state court complaint.

Under Michigan law, collateral estoppel applies when:

(1) there is identity of parties across the proceedings, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated and necessarily determined in the first proceeding,

and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630-31 (1990)); *Phillips v. Weissert* (*In re Phillips*), 434 B.R. 475, 485 (6th Cir. B.A.P. 2010) (citation omitted). Defendant concedes the first, second, and fourth elements have been met. He contests only whether the same issues were "actually litigated" and "necessarily determined" in the state court.

### 1.    Under Michigan Law, a True Default Meets the Actually Litigated Requirement of Collateral Estoppel

A "true default" is a judgment in which "'there was no appearance and absolutely no participation in the state court action' by the defendant debtor." *McCallum v. Pixley (In re Pixley)*, 456 B.R. 770, 776 (Bankr. E.D. Mich. 2011) (citation omitted). This is contrary to a situation where a defendant actually takes some action to participate in his case. *See, e.g., Robinson v. Callender (In re Callender)*, 212 B.R. 276 (Bankr. W.D. Mich. 1997) (finding that the defendant "substantially participated" in his case where his counsel filed an appearance and answer; and, there was participation with discovery and a pre-trial conference).

"Under Michigan law, an issue is 'actually litigated' if it is 'put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter

determined.'" *In re Pixley*, 456 B.R. at 778 (citing *In re Phillips*, 434 B.R. at 486 (majority opinion) (quoting *Latimer v. William Mueller & Son, Inc.*, 149 Mich. App. 620, 386 N.W.2d 618, 627 (1986)).  Although the Michigan Supreme Court has yet to directly decide the issue, the Michigan Court of Appeals has held that collateral estoppel applies to "true default" judgments.[2] *See Detroit Auto. Inter-Insurance Exchange v. Higginbotham*, 95 Mich. App. 213, 290 N.W.2d 414 (1980); *Sahn v. Brisson's Estate*, 43 Mich. App. 666, 204 N.W. 2d 692 (1972); *Braxton v. Litchalk*, 55 Mich. App. 708, 223 N.W.2d 316 (1974).  The Court is not persuaded that the Michigan Supreme Court would overturn its lower courts' rulings that collateral estoppel applies to true defaults.  Other judges in this district have also concluded that, in Michigan, true defaults meet the "actually litigated" requirement so as to be given preclusive effect under a theory of collateral estoppel. *McCallum v. Pixley (In re Pixley)*, 456 B.R. 770 (Bankr. E.D. Mich. 2011); *Micco Constr. Co. v. Brunett (In re Brunett)*, 394 B.R. 425 (Bankr. E.D. Mich. 2008). *But see, In re Phillips*, 434 B.R. at 486.

Debtor's failure to respond to the state court complaint resulted in "[t]he entry of a default judgment [] equivalent to an admission by the defaulting party to all of the matters well pleaded." *Sahn*, 43 Mich. App. at 670-71 (citation omitted).

---

[2]Michigan courts do not use the term "true defaults."

"'Substantial participation' by the defendant in the state court case is not necessary for collateral estoppel to apply.  No participation is necessary." *In re Pixley*, 456 B.R. at 777.  Therefore, all four counts of the state court complaint were "actually litigated."

### 2. The Court Cannot Determine what Counts were Necessary to the Judgment

An issue is "necessarily determined" if it is considered to be "'essential' to the judgment." *People v. Gates*, 434 Mich. 146, 158, 452 N.W.2d 627, 631 (1990) (citation omitted); *See also Detroit Auto. Inter-Insurance Exchange*, 95 Mich. App. at 219 (explaining that the default judgment is deemed to be "conclusive only as to those matters essential to support the judgment") (citation omitted). "Collateral estoppel applies only when the basis of the prior judgment can be clearly, definitely, and unequivocally ascertained." *Ditmore v. Michalik*, 244 Mich. App. 569, 578, 625 N.W.2d 462, 467 (2001) (citing *Gates, supra* at 158). The Court first determines which, if any, of the four counts in the state court complaint satisfy the section 523(a)(6) willful and malicious injury requirement, and then considers whether those counts were necessary to the judgment.

#### a. 11 U.S.C. § 523(a)(6) "Willful" and "Malicious" Injury

A Chapter 7 discharge "does not discharge an individual debtor from any debt[] for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The standard for "willful and malicious injury" under section 523(a)(6) requires Plaintiffs to prove that the Debtor intended to cause the specific injury Plaintiffs suffered.[3] *See Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 977 (1998) ("The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeabiliy takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.") (Emphasis in original). Moreover, "'[m]alicious' means [to act] in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laundani*, 783 F.2d 610, 615 (6th Cir. 1986) (citations omitted).

Plaintiffs' state court complaint included claims for intentional infliction of emotional distress, defamation (business and personal), and tortious interference. The Court examines the elements of each count set forth in Plaintiffs' state court complaint.

---

[3]Plaintiffs' state court complaint alleged that: "[a]s a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered substantial economic injury, loss of good will, harm to its business reputation, loss of esteem and standing in the community, and loss of business opportunities."

-12-

**b.      Two of the State Court Counts would Result in a Nondischargeable Judgment–Two would not**

**i.      Intentional Infliction of Emotional Distress**

Intentional infliction of emotional distress is established when a plaintiff proves: "(1)'extreme and outrageous' conduct; (2) intent or recklessness; (3) causation; and (4) 'severe emotional distress.'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905, 908 (1985) (citation omitted).  Specifically, conduct is  "extreme and outrageous" if it is "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *McCurdie v. Strozewski (In re Strozewski)*, 458 B.R. 397, 407-08 (Bankr. W.D. Mich. 2011). "Intent or recklessness" is demonstrated when a plaintiff proves that "'a defendant specifically intended to cause . . . [him] emotional distress or that a defendant's conduct was so reckless that 'any reasonable person would know emotional distress would result.'" *Lewis v. LeGrow*, 258 Mich. App. 175, 197, 670 N.W.2d 675, 689 (2003) (citation omitted).

Plaintiffs' claim for intentional infliction of emotional distress meets the standard to establish a "willful and malicious" injury under section 523(a)(6). *See In re Strozewski*, 458 B.R. at 408 (reasoning that "[a]lthough . . . the state court's

-13-

determination of liability may have been premised on the [d]ebtor's intentional *or* reckless conduct, either finding is sufficient to establish 'willfulness' under § 523(a)(6)") (emphasis in original). Additionally, "the state court's finding that the [d]ebtor's conduct was 'extreme and outrageous' also establishes that the [d]ebtor's actions toward the [p]laintiff were 'malicious'"). *Id.*

### ii. Tortious Interference with a Business Relationship

Tortious interference with a business relationship occurs when there is: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff. *BPS Clinical Laboratories v. Blue Cross Blue Shield of Michigan*, 217 Mich. App. 687, 698-99, 552 N.W.2d 919, 925 (1996) (citation omitted).

The Sixth Circuit has held that the elements for tortious interference match the elements of section 523(a)(6) where the state court determined that the defendant "caused [a] 'deliberate or intentional injury' to [the plaintiff] 'without just cause or excuse.'" *CMCO Mortgage, LLC v. Hill* (*In re Hill*), 957 F.3d 704, 714 (6th Cir. 2020) (reasoning that to satisfy a claim of tortious interference, it

-14-

was necessary for the state court to determine that the defendant acted with an improper motive and had no legitimate reason to interfere with plaintiff's business). Plaintiffs alleged that "Defendant intentionally and improperly disrupted and interfered with [Roman Stone's] business expectancy by posting disparaging and outright false remarks regarding [the company] on social media, and aiding the public in the harassment and defamation of [the company] website and review pages." Plaintiffs also alleged substantial injuries as a result of "Defendant's wrongful conduct." Therefore, this count satisfies section 523(a)(6).

### iii. Defamation

In Michigan, defamation requires a plaintiff to prove:

(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation *per se*) or the existence of special harm caused by publication (defamation *per quod*).

*Burden v. Elias Brothers Big Boy Restaurants*, 240 Mich. App.723, 726, 613 N.W.2d 378, 381 (2000) (citation omitted) (emphasis in original).

The Sixth Circuit has recognized that a claim for defamation *per se* under Michigan law satisfies the "willful and malicious" injury standard under section 523(a)(6). *See Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576 (6th Cir. 2001);

*See, also*, MICH. COMP. LAWS § 600.2911(1) ("Words imputing a lack of chastity to any female or male are actionable in themselves and subject the person who uttered or published them to a civil action for the slander in the same manner as the uttering or publishing of words imputing the commission of a criminal offense."). As such, Michigan courts "presume that the speakers make such statements knowing that substantial harm or injury will result." *In re Kennedy*, 249 F.3d at 584.

Under common law, business defamation, like the kind alleged in Plaintiffs' state court complaint, constituted defamation *per se. See Heritage Optical Center Inc. v. Levine*, 137 Mich. App. 793, 797, 359 N.W.2d 210, 212 (1984) ("False and malicious statements injurious to a person in his or her business are actionable per se, and special damages need not be alleged or proved."). However, *Heritage* was called into question by *Cetera v. Mileto*, No. 356868, 2022 WL3006778, at *5 (Mich. Ct. App. July 28, 2022) and rejected as inconsistent with the plain and unambiguous language of MICH. COMP. LAWS §§ 600.2911(1) and (2)(a)–which limits defamation *per se* to lack of chastity or the commission of a criminal offense. Therefore, Plaintiffs' state court complaint did not plead defamation *per se*. In addition, Plaintiffs alleged that "Defendant *negligently* or *with actual malice*[,] published false and defamatory statements." Because Plaintiffs' two

defamation counts were for defamation *per quod*, as alleged, they do not satisfy

the section 523(a)(6) willful and malicious injury requirement.

> c. *The Court will not Assume the Default Judgment was*
> *Premised on Alternative Grounds*

"In determining whether a state court judgment collaterally estops a debtor

from contesting the necessary elements of a claim under . . . 11 U.S.C. § 523(a)(6),

> 'the language of the judgment itself is not controlling, but rather the
> Court must look to the "entire record in the original action" to
> determine the "exact nature of the debt on which such judgments was
> based." "It is well settled that the court will look behind a note, a
> mortgage, or even a judgment, to ascertain the nature of the debt, and,
> if it is ascertained to be one which a discharge (in bankruptcy) does
> not bar, it will be so adjudged."'

*Lenchner v. Korn (In re Korn)*, 567 B.R. 280, 299 (Bankr. E.D. Mich. 2017)

(quoting *In re Messer*, 500 B.R. at 880 (quoting *Tudryck v. Mutch*, 320 Mich. 86,

30 N.W.2d 512, 514 (1948)).

The state court ordered that Plaintiffs were entitled to entry of a default

judgment, without adequate explanation. And although the judgment was entered

after a hearing, neither party has provided the Court with a copy of the hearing

transcript. A review of the state-court record, which includes Ferenc and Cassel's

affidavits in support of the default judgment, shows it *could have* been based on

-17-

the two defamation counts alone, which do not satisfy the section 523(a)(6) standard.

Without the ability to review the hearing transcript for possible clarification, this Court will not assume that the state court's lack of explanation meant it intended each count to serve an alternative basis for the judgment. *Contra Kasishke v. Frank* (*In re Frank)*, 425 B.R. 435, 440 (Bankr. W.D. Mich. 2010). Instead, the Court relies on *In re Messer*, which in "respectfully disagreeing" with *Kasishke*, determined that "Michigan courts would give preclusive effect to each count of a multiple-count default judgment, if the judgment clearly and unambiguously states that the judgment is on 'all counts' of the complaint, or the state record indicates this is so[.]". *In re Messer*, 500 B.R. at 885. Neither is the case here.

## V.     CONCLUSION

Because the Court cannot determine which of the four counts were necessary to the state court judgment–two of which would result in a dischargeable judgment debt–Plaintiffs are not entitled to issue preclusion, and the Court **DENIES** Plaintiffs' motion for summary judgment.

> **IT IS ORDERED.**

-18-

**Signed on May 15, 2023**



/s/ Mark A. Randon
_____
Mark A. Randon
United States Bankruptcy Judge